```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Calchem Corp.,

                Plaintiff,                    CV-06-1585 (CPS)

     - against -                              MEMORANDUM OPINION
                                              AND ORDER

Activsea USA LLC and Activair
(New York) Inc.,

                Defendants/
                Third Party Plaintiffs,

     - against -

Ocean World Lines, Inc.,

                Third Party Defendant/
                Fourth Party Plaintiff,

     - against -

COSCO Container Lines and
COSCO North America,

                Fourth Party Defendants.

----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff Calchem Corporation ("Calchem") commenced this action against Defendants Activsea USA LLC and Activair Inc. (collectively "Activsea") on April 4, 2006, alleging that Activsea erroneously transported cargo for Calchem to Shanghai, in violation of Activsea's agreement to ship the cargo to Hong

Kong.[1]  On May 31, 2006, Activsea brought a third party action against Ocean World Lines, Inc. ("OWL"), alleging that OWL negligently delivered Calchem's cargo to Shanghai, in violation of OWL's agreement with Activsea to transport the goods to Hong Kong, and seeking contribution and indemnification from OWL.  On October 5, 2006, OWL filed a Fourth Party Complaint against COSCO Container Lines, Inc. and COSCO North America (collectively, "COSCO"), alleging that COSCO negligently transported Calchem's cargo to Shanghai, in violation of OWL's agreement with COSCO to transport the goods to Hong Kong, and seeking contribution and indemnification from COSCO in the event liability is imposed on OWL for damages allegedly sustained by Calchem and Activsea.  Presently before the Court is COSCO's motion to dismiss the Fourth Party Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure[2], based on the forum selection clause in

---

[1] Plaintiff Calchem seeks compensatory damages in the amount of approximately $42,000, plus costs.

[2] Federal Rule of Civil Procedure 12(b)(3) provides that

> [e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . improper venue . . . .

Fed. R. Civ. Proc. 12(b)(3).  Regarding which rule governs dismissals based on a forum selection clause, the Second Circuit has observed that "there is no existing mechanism with which forum selection enforcement is a perfect fit." *New Moon Shipping Co. v. Mann B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997), *cited in Jockey Int'l Inc. v. M/V Leverkusen Express*, 217 F.Supp.2d 447, 450 (S.D.N.Y. 2002).  Nevertheless, courts in this circuit have treated such motions as falling under Rule 12(b)(3) based on improper venue.  *See, e.g., Jockey Int'l Inc. v. M/V Leverkusen Express*, 217 F.Supp.2d 447, 450 (S.D.N.Y. 2002) (noting that Rule 12(b)(3) "allows courts to consider materials outside the pleadings while [Rule 12(b)(6)] does not"); *J.B. Harris Inc. v. Razei Bar*

the bill of lading[3] issued by COSCO to OWL, which designates the People's Republic of China as the proper forum.[4] For the reasons that follow, Fourth Party Defendant COSCO's motion is granted.

**Background**

The following facts are taken from the pleadings and the parties' submissions in connection with this motion. Disputes are noted.

Calchem, plaintiff in the underlying action, is a New York corporation with corporate headquarters in Huntington, New York. Calchem manufactures adequous coating systems, and defines aqueous coating as "fast-drying, water-based, protective coating

---

*Industries Ltd.*, 37 F.Supp.2d 186, 188 (E.D.N.Y. 1998); *see also Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd., et al.*, 462 F.Supp.2d 1098, 1101 (C.D.Cal. 2006).

[3] *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 19 (2004) (describing a bill of lading as "essentially, a contract . . . [which] records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage"). The United States Carriage of Goods by Sea Act ("COGSA") provides that "[o]n demand of a shipper, the carrier shall issue a bill of lading or shipping document;" and that the bill of lading shall include a statement of
    (1) the marks necessary to identify the goods;
    (2) the number of packages, or the quantity of weight; and whether it is carrier's or shipper's weight; and
    (3) the apparent condition of the goods.
COGSA also states that a bill of lading is "prima facie evidence of receipt of the goods described." 46 U.S.C. § 30703.

[4] In its Answer to the Fourth Party Complaint, COSCO asserts 22 affirmative defenses against OWL's allegations, including improper venue; a counterclaim against OWL for unpaid freight and demurrage charges owed for shipping the containers at issue, and a cross-claim against Activsea for negligence, breach of contract, breach of warranty, and indemnification in the event that this Court finds that OWL suffered any loss or damage. *See* COSCO's Answer with Affirmative Defenses, Counterclaim, and Cross-claim ¶¶ 5-37.

applied to a wide variety of printed products." Complaint ¶ 9.

Defendant and Third Party Plaintiff Activsea USA is a limited liability company organized under New York law with its principal place of business in Jamaica, New York. Defendant and Third Party Plaintiff Activair is a New York corporation with its principal place of business in Jamaica, New York. Together, Activsea USA and Activair are referred to as "Activsea." Defendant Activsea is engaged in business as a common carrier of merchandise by water.

Fourth Party Plaintiff OWL is a U.S. corporation with an office in Lake Success, Nassau County, New York. Fourth Party Defendant COSCO Container Lines Inc. is a Chinese corporation whose agents, COSCO Container Lines Americas Inc. and COSCO North America, have offices in New York, New York and Secaucus, New Jersey, respectively. COSCO North America is a U.S. corporation.

In May 2005, Calchem contracted to sell "78 drums and 16 pails of several types of aqueous coating to Calchem Hong Kong Corp., Ltd. ("Calchem Hong Kong"), a separate entity, at a total price of $28,911.16." Complaint ¶ 10. Calchem states that "[t]he aqueous coating had a shelf life of six months, after which time it would no longer be usable." Complaint ¶ 11.

Calchem states that it entered into a contract with Activsea, in which Activsea agreed to ship the cargo from Calchem's plant in Greenwood, Indiana to Calchem Hong Kong for

$1,623.22.[5] In May 2005, Activsea entered into a contract with OWL in which OWL agreed to ship a container containing "flammable waterborne chemicals" from the Port of Long Beach, California to Hong Kong. On May 5, 2005, OWL contracted COSCO to transport the container from the Port of Long Beach to Hong Kong. On May 9, 2005, Activsea picked up the cargo in Indiana and shipped it by ground to the Port of Long Beach, California. On May 26 or 27, 2005, the cargo was loaded onto the vessel Hanjin Basel in Long Beach.[6] On June 1, 2005, Fourth Party Defendant COSCO issued a bill of lading to Fourth Party Plaintiff OWL. On June 7, 2005, OWL informed COSCO that the container should not be discharged in Shanghai, but that it should be unloaded in Hong Kong.[7] Calchem alleges that on June 10, 2005, the cargo was "erroneously shipped" to Shanghai, unloaded from the vessel, and placed in storage.[8] Plaintiff Calchem states that the cargo was scheduled for delivery to Calchem Hong Kong on or before June 14, 2005. On June 14, 2005, the Hanjin Basel arrived in Hong Kong without the cargo. In July 2005, Calchem learned that the cargo had been unloaded at the Port of Shanghai and states that it "promptly advised" Activsea that the cargo had a six-month shelf life.

---

[5] Activsea denies this allegation. *See* Activsea's Verified Answer ¶ 3.

[6] Activsea denies this allegation. *See* Activsea's Verified Answer ¶ 3.

[7] COSCO denies this allegation. *See* COSCO Answer with Affirmative Defenses, Counterclaim, and Cross-claim ¶ 4.

[8] Activsea denies this allegation. *See* Activsea's Verified Answer ¶ 3.

Calchem alleges that Calchem Hong Kong lost the customer to whom the cargo was to be sold because the cargo had not been delivered to Hong Kong within the expected time frame. Calchem Hong Kong therefore canceled its contract with Calchem. In the following months, Calchem attempted unsuccessfully to retrieve the cargo from the Port of Shanghai. On November 2005, Activsea retrieved the cargo from the Port of Shanghai, and Calchem instructed Activsea not to deliver it to Hong Kong because Calchem Hong Kong had cancelled its contract with Calchem and because the goods would no longer be usable in light of their six-month shelf life. Calchem states that Activsea shipped the cargo to Hong Kong despite Calchem's instructions.[9]

**Discussion**

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under federal law and 28 U.S.C. § 1333, which gives district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333.[10]

---

[9] Activsea denies this allegation. *See* Activsea's Verified Answer ¶ 3.

[10] All claims in the action (in the original complaint, the third party complaint, and the fourth party complaint) are brought under maritime jurisdiction, 28 U.S.C. § 1333, which concerns contracts "having reference to a maritime transaction or a maritime service to be performed." 29 A.L.R.Fed. 325. In contract cases, maritime jurisdiction "is limited to contracts, claims, and service, purely maritime, and touching rights and duties

Fourth Party Defendant COSCO moves to dismiss the Fourth Party Complaint pursuant to the China forum selection clause in the COSCO Sea Waybill (the bill of lading).

Clause 26 of the bill of lading provides that:

(1) This Bill of Lading is governed by the laws of the People's Republic of China. All disputes arising under or in connection with this Bill of Lading shall be determined by the laws of the People's Republic of China and any action against the Carrier shall be brought before the Shanghai Maritime Court or other maritime courts in the People's Republic of China, as the case may be.

(2) Notwithstanding the provision of 26(1), where carriage includes carriage to or from to through a port or place in the United States of America, this Bill of Lading shall be subject to the provisions of the US COGSA [the United States Carriage of Goods by Sea Act], which shall be deemed to have been incorporated herein and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights, immunities, exceptions or limitations or an increase of any of its liabilities under US COGSA. The provision cited in the COGSA (except as may be otherwise specifically provided herein) shall also govern before loading and after discharge as long as the goods remain in the Carrier's custody and control.

Fourth Party Defendant's Exhibit 1, COSCO Sea Waybill, clause 26. Clause 12.106 of the service contract (an agreement separate from the bill of lading) between OWL and COSCO provides that

> In the event of any dispute arising out of this contract, the merchant and the carrier agree to binding arbitration before the China Maritime Arbitration Association Committee (if permitted by the Shipping Act of 1984 as amended by the Ocean Shipping Reform Act of 1998), or, if not so permitted, at a location mutually agreed to by the parties, or, if the parties are unable to agree, then in New York, New York.

---

appertaining to commerce and navigation." *Id*. Maritime jurisdiction extends, among other things, to "contracts of affreightment, contracts for the conveyance of passengers, pilotage of the high seas, wharfage, [and] agreements of consortships." *Id.*

Fourth Party Plaintiff Exh. 1, Service Contract, No. ECN04207, clause 12.106. Because the bill of lading and the service contract are maritime contracts, federal law governs this action. *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 24 (2004) (determining that bills of lading at issue were maritime contracts and therefore governed by federal law "because their primary objective is to accomplish the transportation of goods by sea").[11] "A mandatory forum selection clause in a bill of lading contract is valid and presumptively enforceable." *Tokio Marine and Fire Ins. Co. Ltd. v. Cosco*, 2004 1950387, at *2 (C.D.Cal. 2004) (citations omitted).

*Fourth Party Plaintiff's Arguments*

Fourth Party Plaintiff OWL contends that the maritime service contract between OWL and COSCO, rather than the bill of lading, should govern this dispute partly because the service contract was effective between October 15, 2004 and October 15,

---

[11] The United States Carriage of Goods by Sea Act ("COGSA") applies to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 U.S.C. § 30701. The "terms and conditions [in the bill of lading] bind the shipper and all . . . carriers," and "[e]ach term has in effect the force of statute of which all effected must take notice." *Southern Pacific Transportation Co. v. Commercial Metals*, 456 U.S. 336, 342-43 (1982). Moreover, "a bill of lading may not be modified by extrinsic or parol evidence." *United Van Lines Inc. v. Hellman*, 949 F.Supp. 126, 129 (E.D.N.Y. 1996).

2005, during which time the misdelivery occurred.[12] However, there is no language in the service contract which clearly shows that the service contract's forum selection provision should govern.[13] The bill of lading provides that "[n]o servant, agent

---

[12] Fourth Party Plaintiff also seems to argue that the service contract applies in stating that "the subject sea waybill of lading specifically identifies the service contract, no. ECN04207." Fourth Party Plaintiff Memorandum in Opposition to the Motion to Dismiss, p. 3. "ECN04207" is written in a box with the heading "Export References" in the bill of lading, *see* Fourth Party Defendant's Exhibit 1, COSCO Sea Waybill, p. 1, but the Fourth Party Plaintiff does not explain what legal effect of this reference has with respect to the issue which agreement governs. Clause 12.107 of the Service Contract provides that "the service contract number of this contract shall be written on each bill of lading covering a shipment under this contract." Fourth Party Plaintiff Exh. 1, Service Contract, No. ECN04207, clause 12.107. Because this provision does not define or explain the relationship between the Service Contract and the Bill of Lading, I cannot determine what the parties intended in this provision. *See Eastern Fish Company v. South Pacific Shipping Co. Ltd.*, 105 F.Supp.2d 234, 238 (S.D.N.Y. 2000) (determining that forum selection clause in service contract superseded forum selection clause in bill of lading partly because the service contract explicitly provided that "all Bills of Lading must be claused 'cargo shipped pursuant to service contract 97-35.'") (internal quotations omitted).

[13] Other courts have found a forum selection clause in a service contract to supersede a forum selection clause in a bill of lading where the service contract clearly provided that the service contract would govern. In *Eastern Fish Co. v. South Pacific Shipping Co. Ltd.*, 105 F.Supp.2d 234, 238, the district court determined that the bill of lading's forum selection provision was inapplicable because the service contract contained the following clause:

> Except as otherwise provided herein, all cargo shipped under this Service contract shall be subject to carrier's governing tariff(s) in effect at the time of shipment and all applicable rules, regulations, terms, and conditions contained in carrier's bills of lading issued for such cargo. All provides of such tariff(s) and bills of lading are hereby incorporated in this Service Contract.

*Eastern Fish*, 105 F.Supp.2d at 238. The district court construed the phrase "except as otherwise provided herein" to mean that "where there is express language in the Service Contract which conflicts with a bill of lading, the language of the Service Contract controls." *Id.* Because the forum selection clause was an express provision in the service contract, that clause controlled. *Id.* The Service Contract in this case contains no similar language referencing the bill of lading. In *Great White Fleet Ltd. v. DSCV Transport Inc.*, 2000 WL 1480404, at *2 (S.D.N.Y. 2000), the district court found that the service contract should govern based on contractual language providing that "[a]ll disputes arising out of *or by reason of the contract or the relationships created thereby* shall be brought by or against the Carrier

or Sub-contractor of the Carrier shall have the power to waive or vary any terms of this Bill of Lading unless such waiver or variation is in writing and is specifically authorized or approved in writing by the Carrier." Fourth Party Defendant's Exhibit 1, COSCO Sea Waybill, clause 27. Moreover, because the bill of lading was issued after the service contract[14], the bill of lading controls. *See TMC Co. Ltd. v. M/V Mosel Bridge*, 2002 WL 1880722, at *1 (S.D.N.Y. Aug. 15, 2002) (finding that "the forum selection clause in the way bill, which postdated and is flatly inconsistent with that in the service contract, would have superseded the latter with respect to the cargo at issue").[15]

---

in the [Eastern District of Louisiana]." *Great White Fleet*, 2000 WL 1480404, at *2 (emphasis added). The scope of the Service Contract in this case is more limited, with the Service Contract providing that "in the event of any dispute arising out of *this contract*, the [parties] agree to binding arbitration . . . ." Service Contract, clause 12.106 (emphasis added). As in the case of *Regal-Beloit Corporation v. Kawasaki Kisen Kaisha, Ltd.*, 462 F.Supp.2d 1098, 1105 (C.D.Cal. 2006), the Service Contract here may be construed to relate to the cargo's content, volume, and rates whereas the bill of lading specifically provides for cargo delay and damage. *See* Fourth Party Defendant's Exhibit 1, COSCO Sea Waybill, p. 2, clauses 6 and 19. Since the underlying action in this case concerns cargo delay and damage, the dispute cannot be said to "arise out of" the Service Contract. *See Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F.Supp.2d 1098, 1105 (C.D.Cal. 2006) (determining that forum selection clause in bill of lading governed dispute in part because "[b]y their terms, the service contracts govern only claims for breach of their pricing and shipping provisions . . . .[and] do not extend to claims for cargo damage, nor do they modify the terms and conditions set forth in the Bills of Lading").

[14] The service contract was effective on October 15, 2004. *See* Fourth Party Plaintiff Exh. 1, Service Contract, No. ECN04207, clause 8. COSCO issued the bill of lading to OWL on June 1, 2005. *See* Wolfson Declaration ¶ 3.

[15] The district court in *TMC Co. Ltd.* states that "[a] second contract of a later date than an earlier contract containing the same subject matter, but containing terms inconsistent with the former contract, will supersede the former contract even though there is no express agreement that the new contract shall have that effect." *TMC Co. Ltd. v. M/V Mosel Bridge*, 2002 WL 1880722, at *1 (S.D.N.Y. Aug. 15, 2002) (citing *Decca Records v. Republic*

OWL further argues that even if the bill of lading controls, the Shipping Act of 1984, 46 U.S.C. § 40502 (as amended by the Ocean Shipping Reform Act of 1998), prohibits COSCO from designating the People's Republic of China as the forum for dispute resolution. Under the heading "Service Contracts," that statute provides that

> Unless the parties agree otherwise, the exclusive remedy for breach of a service contract is an action in an appropriate court. The contract forum may not be controlled or in any way affiliated with a controlled carrier or by the government that owns or controls the carrier.

46 U.S.C. § 40502. OWL contends that because the People's Republic of China owns or controls COSCO, it cannot be the contract forum. However, this statute by its own terms applies to service contracts, and neither the statute nor case law suggests that this provision applies to bills of lading. Clause 26 of the bill of lading provides that "this Bill of Lading shall be subject to the provisions of the [United States Carriage of Good by Sea Act ("COGSA")]." Fourth Party Defendant's Exhibit 1, COSCO Sea Waybill, p. 2. The Shipping Act is not mentioned. And, indeed, subsequent to the amendments to the Shipping Act, courts have upheld forum selection clauses in bills of lading

---

*Recording Co.*, 235 F.2d 360, 363 (6th Cir. 1956) (internal quotations omitted). *Accord GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 66 F.3d 862, 866 (7th Cir.1995); *Wiley v. Dixie Oil Co.*, 43 F.2d 51, 52 (10th Cir.1930); *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft,* 164 F.Supp.2d 1260, 1263 (D.N.M. 2001); RESTATEMENT (SECOND) OF CONTRACTS § 279 and cmt. a.

designating the People's Republic of China as the forum where a carrier controlled by the People's Republic of China is a party to the bill of lading. *See, e.g., The Tokio Marine and Fire Ins. Co. v. COSCO*, 2004 WL 1950387, at *2 (C.D.Cal. 2004); *LPR, SRL v. Challenger Overseas LLC*, 2000 WL 973748, at *3 (S.D.N.Y. 2000).

OWL argues next that COSCO has waived its right to enforce the forum selection clause by filing the third party action against OWL. *See* Fourth Party Plaintiff OWL's Memorandum in Opposition to COSCO's Motion to Dismiss, p. 7-8. However, waiver of an alternate forum "is not to be lightly inferred." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985). "Courts have found implied waiver of venue where a party has repeatedly represented that venue is appropriate or actively pursued substantive motions." *Ferraro Foods, Inc. v. M/V Izzet Incekara*, 2001 WL 940562, at *4 (S.D.N.Y. 2001). COSCO raised improper venue as an affirmative defense in its Answer. *See* COSCO's Answer with Affirmative Defenses, Counterclaim, and Cross-Claim ¶ 21. Asserting a counterclaim does not constitute waiver where the counterclaim is "compulsory" as defined in Federal Rule of Civil Procedure 13(a)[16] and would therefore be barred under *res*

---

[16] Rule 13(a) provides that

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

*judicata* principles if the counterclaim were not asserted. *See Sage Realty Corp. v. Insurance Co. of North America*, 34 F.3d 124, 129 (2d Cir. 1994) (refusing to enforce waiver provision because it could preclude defendant from asserting its claims in subsequent action); *Baker v. Gold Seal liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) ("A counterclaim which is compulsory but is not brought is thereafter barred."). Accordingly, I conclude that COSCO has not waived its right to enforce the forum selection clause.

Finally, Fourth Party Plaintiff OWL argues that COSCO must remain in the action pursuant to Federal Rule of Civil Procedure 14(c). That rule provides

> When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h)[17], the defendant or person who asserts a right under Supplemental Rule C(6)(a)(1), as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make any defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

Fed. R. Civ. Proc. 14(c). OWL argues that COSCO must remain in

---

Fed. R. Civ. Proc. 13(a).

[17] Fourth Party Plaintiff has asserted that the action against COSCO is an admiralty and maritime claim under Rule 9(h) and Rule 14(c). *See* Fourth Party Complaint ¶ 1.

the suit because OWL has "demanded judgment" against COSCO in favor of Calchem, Plaintiff in the action. However, OWL has in fact not requested in its complaint that COSCO be held liable to Calchem. OWL states in its Opposition Memorandum that it "outlined in the complaint why COSCO is directly liable to plaintiff." COSCO Opposition Memorandum, p. 9. On the contrary, OWL outlined why OWL could be entitled to contribution and indemnification from COSCO.[18] In seeking indemnification from COSCO, the complaint does not suggest that COSCO be held liable to Calchem, let alone that COSCO answer Calchem's Complaint. Accordingly, OWL cannot defeat COSCO's motion to dismiss on this ground. *See Royal Ins. Co. Of America v. American Rigging Co.*, 194 F.3d 1009, 1018 (9th Cir. 1999) ("The third-party complaints directed [third party defendants] to answer [third party plaintiff's] complaint, which they did."); *Texas A & M Research Foundation v. Magna Transportation, Inc.*, 338 F.3d 294, 299 (5th Cir. 2003); *Pizzuro v. Waterman SS Lines, Inc.*, (S.D.N.Y. 1981)

---

[18] OWL alleges in the Fourth Party Complaint that

> If Calchem and/or Active sustained damages as is alleged in the respective complaint and third party complaint, which OWL denies, said damages resulted from the primary, active and direct fault, negligence, and want of care, omission, breach of duty, breach of contract of carriage, and/or breach of warranty (express or implied) on the part of COSCO and/or its breach of duties as carrier.

> If any liability shall be imposed on OWL, they should be awarded full indemnity . . . and/or contribution by COSCO together with costs and disbursements . . . .

Fourth Party Complaint ¶¶ 17-18.

("Waterman did not demand judgment against Lutheran on behalf of plaintiff. Consequently the Court need not address the question whether Rule 14(c) applies in this case."); *Williams v. United States*, 42 F.R.D. 609, 615 (S.D.N.Y. 1967) ("Although the impleading petition here calls upon the State to answer the libel as well as the petition, the prayer for relief contains no demand for judgment against the State in favor of the original plaintiff. It would seem, then, that by calling upon the State to answer the libel, the United States was merely attempting to plead the predicate of its indemnity claim."); *see also* Moore's Federal Rules Pamphlet § 14.7 ("If the third-party complaint does not request that judgment be entered for the plaintiff and against the third-party defendant, then Rule 14(c) is inapplicable, and any liability of the third-party defendant may run only to the third-party plaintiff.").

Beyond the arguments discussed above, OWL has made no showing that enforcing the forum selection clause would be unreasonable or unjust or that the clause is invalid due to fraud or overreaching. *See, e.g., Regal-Beloit Corp. v. Kawasaki Kishen Kaisha, Ltd.*, 462 F.Supp.2d 1098, 1102 (C.D.Cal. 2006) (taking into account factors such as fraud, inconvenience, and public policy considerations in assessing request to invalidate forum selection clause). Accordingly, COSCO's motion to dismiss the Fourth Party Complaint, as well as COSCO's counterclaim

against OWL and its cross-claim against Activsea[19], is granted.

## Conclusion

For the reasons set forth above, COSCO's motion to dismiss is granted. The Clerk is directed to transmit a copy of the within to the parties and to the Magistrate Judge.

SO ORDERED.

    Dated :   Brooklyn, New York
                July 24, 2007

                By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                      United States District Judge

---

[19] COSCO states in its Reply Memorandum that COSCO seeks dismissal of "all claims in the fourth-party action without prejudice." COSCO Reply Memorandum, p. 8.